UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00084-GNS-LLK

WILLIAM A. WHYBARK, JR.; and
BELINDA A. WHYBARK                                                                PLAINTIFFS

v.

SYNTHES, INC. d/b/a SYNTHES LTD. (USA);
SYNTHES, INC.; DePUY SYNTHES, INC.;
JOHNSON & JOHNSON INTERNATIONAL; and
JOHNSON & JOHNSON                                                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (DN 35). For the following reasons, the motion is **GRANTED**.

### I.      BACKGROUND

On December 30, 2013, Plaintiff William Whybark, Jr. ("Whybark") underwent surgery to correct an osteoarthritis issue in his left foot at Vanderbilt Medical Center. (Pls.' Resp. Defs.' Mot. Summ. J. Ex. A, DN 36-1). During the surgery, Dr. David Trenner, D.P.M. ("Dr. Trenner") implanted a Synthes 02.226.740 4.5 mm headless compression bone screw ("Synthes screw") in Whybark's first metacarpal joint. (Trenner Dep. 20:10-14, 27:15-18, 34:7-15, May 10, 2016, DN 35-6).

Follow-up examinations in the two months post-surgery revealed that Whybark's bones were in the process of healing, but not yet fully healed. (Trenner Dep. 54:21-55:9, 57:3-6). On April 11, 2014, Whybark returned to Dr. Trenner complaining of pain and an x-ray revealed pseudoarthrosis (nonunion) of the bones and that the Synthes screw had fractured. (Trenner Dep.

58:24-59:18). Consequently, an additional surgery was performed to remove part of the broken screw and place new hardware in Whybark's left foot. (Trenner Dep. 74:4-25, 75:16-18).

Whybark and his wife, Belinda Whybark, (collectively "Plaintiffs") brought this action in this Court against Defendants Synthes, Inc. d/b/a Synthes Ltd. (USA), Synthes, Inc., DePuy Synthes, Inc., Johnson & Johnson International, and Johnson & Johnson (collectively "Defendants") asserting state law claims for negligence, strict liability, and loss of consortium. (Compl. ¶¶ 12-30). During discovery, Dr. Trenner testified that he suspected the breakage of the Synthes screw was due to a manufacturing defect because he had never seen a bone screw break after surgery. (Trenner Dep. 64:15-22, 65:3-14). Michael Roach, Ph.D. ("Dr. Roach"), a metallurgist and biomedical engineer with expertise in fracture fixation device metals and failure analysis, opined that the Synthes screw met industry standards and that there were no defects in the design or manufacturing of the screw. (Defs.' Mot. Summ. J. Ex 7, 11, DN 35-8 [hereinafter Roach Report]). Dr. Roach further expressed his opinion that the Synthes screw failed from delayed healing of the bones which caused a fatigue fracture of the screw. (Roach Report 11). Michael Castro, D.O. ("Dr. Castro"), a board-certified foot and ankle surgeon, opined that the screw design was safe and effective; that the screw broke as a result of non-healing; and that Whybark likely would have required a second surgery even if the screw had not broken. (Defs' Mot. Summ. J. Ex. 8, 5-6, DN 35-9 [hereinafter Castro Report]). Further, Dr. Castro stated that Dr. Trenner's testimony about a possible manufacturing defect has no scientific basis, is contrary to generally accepted orthopedic and biomechanical standards, and is not support by ay peer-review literature. (Castro Report 6). Plaintiffs presented no expert proof other than Dr. Trenner's testimony that he had never seen a screw break before.

Defendants subsequently moved for summary judgment, which motion has been fully briefed. (Defs.' Mot. Summ. J., DN 35). Thus, this matter is ripe for adjudication.

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence establishing the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of

the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

In Kentucky, product liability actions are governed by the Kentucky Product Liability Act ("KPLA"), KRS 411.300-411.350. "Kentucky law recognizes three theories of product liability: (1) defective design, (2) defective manufacture, and (3) failure to warn." *Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 705-06 (W.D. Ky. 2013) (citing *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995), *overruled on other grounds by Martin v. Ohio Cty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009)). Regardless of the theory of recovery, Kentucky law requires proof of a product defect, and legal causation. *McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998); *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985); *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 537 (6th Cir. 1995) (citing *Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. 1972)).

### A. Design Defect

A product design is defective if it creates such a risk of injury that an ordinarily prudent manufacturer, being aware of the risk, would not have put it on the market. *C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 344-45 (E.D. Ky. 1982); *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 433 (Ky. 1980). There is no evidence of a design defect in this case. In fact, Dr. Trenner testified that the screw design was safe and effective. (Trenner Dep. 43:17-20). Plaintiffs have not responded to the Defendant's request for summary judgment as to this theory of relief. Therefore, Plaintiffs' claims brought under a theory of design defect fail as a matter of law. *See McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 854 (E.D. Ky. 2015) ("A plaintiff[] abandons claims that he fails to brief before the district court. As a result, district courts properly

decline to consider the merits of a claim where the non-movant fails to address the issue in his response to a summary judgment motion." (internal citation omitted) (citation omitted)).

B. **Failure to Warn**

With respect to failure to warn, Kentucky has adopted the learned intermediary doctrine, which requires medical device manufacturers to provide warnings to the physician, not the patient. *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 706 (E.D. Ky. 2003); *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 762 (Ky. 2004). The undisputed facts in the record demonstrate that an insert in the Synthes package contained adequate warnings. (Defs.' Mot. Summ. J. Ex. 3, at 1-2, DN 35-4). Further, Plaintiffs have proffered no response to Defendant's request for summary judgment as to this theory of relief. Therefore, Plaintiffs' claims brought under a theory of failure to warn fail as a matter of law. *See McCartt*, 139 F. Supp. 3d at 854.

C. **Manufacturing Defect**

Plaintiffs' arguments focus on the theory of manufacturing defect. A manufacturing defect includes failure of the product to meet specifications or an error in the manufacturing process. *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788-89 (6th Cir. 2005); *Ford Motor Co. v. McCamish*, 559 S.W.2d 507, 509 (Ky. App. 1977). In addressing this claim, the Court must consider whether expert testimony is necessary to prove such a claim and if so, whether Plaintiffs have presented sufficient expert testimony to survive summary judgment.

1. *Expert Testimony*

Under Kentucky law, expert witnesses are "generally necessary" to prove the presence of a defect in a products liability action. *Honaker v. Innova, Inc.*, No. 1:04-CV-132-M, 2007 WL 1217744, at *2 (W.D. Ky. Apr. 23, 2007) (quoting William S. Haynes, *Kentucky Jurisprudence: Torts* §§ 21-28 (1987)). As the Sixth Circuit has explained, "[e]xpert testimony may be required

in cases in which the question is of a complex and technical nature such that a lay juror could not, without the aid of the expert, infer that a defective condition of the product caused the product's failure and caused the injury to the plaintiff." *Stevens v. Keller Ladders*, 1 F. App'x 452, 458 (6th Cir. 2001) (citation omitted). By contrast, "matters of general knowledge" do not require expert testimony. *Honaker*, 2007 WL 1217744, at *2. Accordingly, expert testimony is necessary unless a defect is of the type that the jury can comprehend "as well as a specially trained expert could." *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 681 (E.D. Ky. 2013), *aff'd*, 579 F. App'x 372 (6th Cir. 2014).

The crux of the dispute here is whether an ordinary person is familiar enough with the principles of the Synthes screw, a federally regulated medical device, to know whether one is defective. It seems far outside the realm of common experience to have any interaction with internal fixation devices, such as bone screws, other than orthopedic surgeons and accident victims. The Court concludes that the existence of a design defect in the specialized medical device at issue in this case is unquestionably not within the realm of knowledge of the ordinary layperson. *See Trent v. Ford Motor Co.*, 2 F. Supp. 3d 1022, 1027 (W.D. Ky. 2014) (requiring expert testimony because "[plaintiff's] design defect claim turns on specialized knowledge that 'cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life.'" (quoting *Templeton v. Wal-Mart Stores East, LP*, 2011 WL 4591937, at *3 (E.D. Ky. Sept. 30, 2011))). Moreover, Courts applying Kentucky law have required expert testimony for far less technical matters presented here. *See Wells v. Wal-Mart Stores Inc.*, No. CV 15-69-ART, 2016 WL 1453912, at *2-3 (E.D. Ky. Apr. 13, 2016) (requiring expert testimony in a product liability action concerning a design defect of a toilet seat); *Yonts v. Easton Tech. Prods., Inc.*, No. 3:11-CV-535-DJH, 2015 WL 3408937, at *5-6 (W.D. Ky. May

27, 2015) (requiring expert testimony as to the defect of an arrow that broke while shooting a bow); *Honaker*, 2007 WL 1217744, at *2 (requiring expert testimony as to the closing mechanism on a pressure cooker). Accordingly, proof from an expert addressing the existence of a defect in the Synthes screw and causation is necessary here to demonstrate a triable issue to warrant a jury trial.

As noted above, the only expert proffered by Plaintiffs as having an opinion that there was *possibly* a defect in the Synthes screw is Whybark's treating physician, Dr. Trenner. Defendants contend that Dr. Trenner is not qualified to express an opinion regarding the existence of a manufacturing defect and that his opinion relating to a defect is not reliable. According to Defendants, "Dr. Trenner never reviewed the design drawings or the manufacturing records, could not testify within a reasonable degree of medical probability that there was a manufacturing defect, and agreed to defer to a metallurgist on the issue." (Defs.' Mot. Summ. J. 8). Defendants contend that Dr. Trenner's opinion falls short of meeting the recognized *Daubert* criteria. (Defs.' Mot. Summ. J. 8). Further, Defendants have moved to exclude Dr. Trenner's testimony in regard to his opinion concerning a defect in the Synthes screw.[1] The exclusion of Dr. Trenner's testimony as to the defect of the screw is not without consequence because absent his expert opinion there is no evidence in the record to create a genuine issue of fact regarding a manufacturing defect in the Synthes screw. Thus, the sufficiency of Dr. Trenner's key testimony under *Daubert* is determinative of this case.

Fed. R. Evid. 702 permits the use of technical or specialized knowledge where it will assist the trier of fact to determine a fact in issue. As a prerequisite, the evidence must meet the following criteria:

---

[1] Defendants did not file a separate *Daubert* motion. Instead, Defendants incorporated the *Daubert* motion into their Motion for Summary Judgment. (Defs.' Mot. Summ. J. 8 n.36).

7

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). *See also* Fed. R. Evid. 702, Advisory Comm. Note to 2000 Amendment ("[N]o single factor is necessarily dispositive of the reliability of a particular expert's testimony."). Under this rule, the trial judge is the gatekeeper to ensure that expert testimony satisfies the requirements of reliability and relevance. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). As the Sixth Circuit has further noted:

> Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable.

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (citing Fed. R. Evid. 702).

A review of Dr. Trenner's educational background and experience reflect that he is not qualified as an expert to testify regarding the manufacture of the Synthes screw. Rule 702 requires that an expert have "scientific, technical, or other specialized knowledge." The Sixth Circuit instructs that "[e]xperts are permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (second alteration in original) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)). Still, the "liberal interpretation of this requirement does not

8

mean that a witness is an expert simply because he claims to be." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (internal quotation marks omitted) (citations omitted). The Court's role is to examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (internal quotation marks omitted) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

Dr. Trenner's opinion as to a defect in manufacture of the bone screw relates to a field entirely different from his medical background. Dr. Trenner claims no training, education or experience in areas of manufacturing processes, metallurgy, or biomedical engineering. Plaintiffs offer no explanation as to why Dr. Trenner's clinical experience and personal knowledge of bone screws afford him the competency to opine regarding an alleged defect in its manufacture. Plaintiffs have failed to show that Dr. Trenner's expertise in orthopedic medicine qualify him to testify as to the mechanical functioning of a medical device. *See Fuesting v. Zimmer, Inc.*, 594 F. Supp. 2d 1043, 1049 (C.D. Ill. 2009), *aff'd*, 362 F. App'x 560 (7th Cir. 2010) ("[The treating physician's] testimony is admissible if limited to the care, treatment, prognosis, and/or conditions present during [] surgery. His testimony beyond that of a treating physician does not satisfy the *Daubert* factors, so he is unable to offer an expert opinion as to causation and defect."); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1316 n.3 (N.D. Okla. 2000) ("Dr. Farrar further lacks the qualifications necessary to render opinions regarding the mechanical behavior of the Rogozinski device while implanted. Dr. Farrar has demonstrated absolutely no training, education, or experience in biomechanics or any related field."); *Steinman v. Spinal Concepts, Inc.*, No. 05-CV-774S, 2011 WL 4442836, at *5 (W.D.N.Y. Sept. 22, 2011) ("To the extent that [the plaintiffs' treating orthopedic surgeon] will

9

testify about any defects in the design or manufacture of the Acufix system, he is clearly not qualified."). Consistent with these cited cases, the Court concludes that Dr. Trenner is not qualified to express an expert opinion as to the manufacturing processes and defect of the Synthes screw.

Furthermore, Dr. Trenner's testimony that the Synthes screw was defective falls far from meeting the standard for reliability under *Daubert*. Although Dr. Trenner testified that the Synthes screw was probably defective, he also expressed this same opinion in terms of possibility, speculated that "maybe there was a potential" defect, and also testified that he *could not* testify to the existence of a manufacturing defect within a reasonable podiatric probability. (Trenner Dep. 64:15-22, 65:11-14, 88:10-14, 90:16-91:1). "Rule 702 directs courts to focus on the reliability of expert testimony, rather than the 'credibility and accuracy' of that testimony." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529). In relevant part, Rule 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court identified a non-exhaustive list of factors a trial court may consider in evaluating an expert's proposed testimony. *Daubert*, 509 U.S. at 592. These factors include:

> (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14-CV-00022-JMH, 2016 WL 276126, at *2 (W.D. Ky. Jan. 21, 2016) (quoting *Daubert*, 509 U.S. at 592-94).

Dr. Trenner arrived at his conclusion that the Synthes screw was *possibly* defective because he had never before personally observed a bone screw break. (Trenner Dep. 64:15-22). However, Dr. Trenner conceded that it is generally accepted in the medical community that bone screws can fracture secondary to fatigue when subject to loads caused by nonunion.[2] (Castro Report 5; Trenner Dep. 40:5-19). Further, there is no indication that Dr. Trenner's methodology in arriving at this conclusion was subject to peer review. Dr. Trenner testified that he did not review any of the manufacturing records for the device, he did not know what type of quality control Synthes used in the manufacture of these particular screws, and he did not cite any orthopedic or biomedical principles to support his opinion that the product was, or possibly was, defective. (Trenner Dep. 64:25-65:7). In fact, the only reasoning Dr. Trenner gave for his "conclusion" was that he had never seen a bone screw fail before. (Trenner Dep. 64:15-22, 65:3-14). Significantly, Dr. Trenner also stated he would "absolutely" defer to a metallurgist on the issue of whether the screw was defectively manufactured. (Trenner Dep. 92:5-15). Defendants have proffered the expert report of a metallurgist, Dr. Roach, who opined that the screw was not defective. (Roach Report 11). All of this indicates that Dr. Trenner's opinion as to the screw defect was based less on a reasonable examination of facts and data than on personal speculation and surmise. *See Wells*, 2016 WL 1453912, at *1 ("[E]vidence that induces mere "surmise or speculation" is not sufficient to establish that a defect exists." (citing *Midwestern V.W. Corp. v.*

---

[2] Plaintiffs incorrectly assert that Whybark's foot was "healing normally" before the broken screw was discovered in April 2014. Instead, interim radiology reports and examinations revealed non-union of the fracture in January, February, and March 2014, before the discovery of the broken screw in April. (Trenner Dep. 58:21-59:24).

*Ringley*, 503 S.W.2d 745, 747 (Ky. 1973))). As such, the Court concludes that Dr. Trenner's opinion regarding the presence of a manufacturing defect in the subject screw is not reliable.

Accordingly, because Dr. Trenner is not qualified to give an expert opinion as to the presence of a manufacturing defect of the Synthes screw and his opinion is particularly unreliable in this regard, his testimony as to a defect in the Synthes screw will be excluded. Dr. Trenner's proffered expert opinion regarding a defect in the screw does not satisfy the *Daubert* factors, so that his opinion regarding causation and defect is inadmissible.

### 2. *Sufficiency of Proof*

Consequently, Plaintiffs have not proffered admissible expert testimony that the Synthes screw was defective. Therefore, Plaintiffs cannot prove an essential element of their strict liability and negligence claims, and these claims fail as a matter of law.

The Court rejects Plaintiffs' contention that expert opinion as to defect is not necessary to survive summary judgment because of the circumstantial evidence present in the case. (Pls.' Mot. Summ. J. 6). For this proposition, Plaintiffs rely upon *Embs v. Pepsi Bottling Company*, 528 S.W.2d 703 (Ky. 1975), where Kentucky's highest court inferred a defect without direct evidence because the exploding of a properly manufactured bottle would not normally occur without a defect. *Id.* at 706. However, as this Court has previously noted, "courts permit[] inferences of defects premised on such circumstantial evidence *only* when the plaintiffs [are] able to eliminate all other reasonable explanations for the accident, thereby leaving manufacturing defect as the only reasonabl[e] possibl[ity] . . . ." *Siegel v. Ky. Farm Bureau Mut. Ins. Co.*, No. 3:08-CV-00429-S, 2010 WL 3000746, at *4 (W.D. Ky. July 26, 2010), *aff'd sub nom. Siegel v. Dynamic Cooking Sys., Inc.*, 501 F. App'x 397 (6th Cir. 2012) (emphasis added).

Plaintiffs have provided no evidence in the record to eliminate all other possible theories as to why the Synthes screw broke. In fact, Dr. Trenner explicitly recognized that the nonunion of the bone could have caused the Synthes screw to break, rather than its defective manufacture. (Trenner Dep. 40:2-15). A manufacturing defect is not the only reasonable conclusion to reach in this instance where Plaintiffs' only expert concedes that an alternative cause—i.e., non-union of the bone—could cause a bone screw to break. Therefore, Plaintiffs' circumstantial evidence is simply not sufficient for their claims to survive summary judgment.

Because Dr. Trenner was Plaintiffs' only expert witness testifying to the product's defectiveness, and because his testimony on this issue has been excluded, Plaintiffs are left with no witness, expert or otherwise, to testify regarding the product's defectiveness. Rule 56 requires entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element for which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Thus, with no evidence to establish a defect in the product, Plaintiffs cannot establish an essential element of either their negligence or strict liability claims. Furthermore, loss of consortium is not a standalone claim, and fails due to the fact that none of the other claims survive this motion. *See McDaniel v. BSN Med., Inc.*, No. 4:07-CV-00036, 2010 WL 4779767, at *4 (W.D. Ky. Nov. 6, 2010) ("A loss of consortium claim 'is derivative in nature, arising out of and dependent upon the right of the injured spouse to recover.'" (quoting *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983))). *See also Stamper v. Stainless Steel Invest, Inc.*, No. 3:11-CV-00069-EBA, 2012 WL 2590353, at *5-6 (E.D. Ky. July 3, 2012) (quoting *McDaniel* and denying a loss of consortium claim when her husband's tort claim was barred). Accordingly, Defendants' motion must be granted.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 35) is **GRANTED**.

**Greg N. Stivers, Judge
United States District Court**

May 3, 2017

cc: counsel of record